UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | |
|---|---|
| TONY L. HUNTER<br>LA. DOC #333814<br>VS. | CIVIL ACTION NO. 3:11-cv-0343<br><br>SECTION P<br><br>JUDGE ROBERT G. JAMES |
| WARDEN BURL CAIN | MAGISTRATE JUDGE KAREN L. HAYES |

REPORT AND RECOMMENDATION

Tony L. Hunter, appearing herein through his attorney John Harvey Craft, filed the instant petition for writ of *habeas corpus* pursuant to 28 U.S.C. §2254 on March 2, 2011. Hunter is an inmate in the custody of Louisiana's Department of Public Safety and Corrections. He is incarcerated at the Louisiana State Penitentiary, Angola. This petition attacks Hunter's 2004 convictions for second degree murder and attempted armed robbery and the consecutive sentences of life imprisonment and 49 ½ years imposed by the Fourth Judicial District Court, Ouachita Parish.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. For the following reasons it is recommended that the petition be **DISMISSED WITH PREJUDICE** as time-barred by the provisions of 28 U.S.C. §2244(d).

*Background*

On March 4, 2004, Hunter was found guilty as charged of three counts of second degree murder and one count of attempted armed robbery. Thereafter he was sentenced to serve consecutive sentences of life and 49 ½ years. He appealed to the Second Circuit Court of Appeals, and on June 29, 2005, his convictions and sentences were affirmed. *State of Louisiana v. Tony Lavelle Hunter*, 39,664 (La. App. 2 Cir. 6/29/2005), 907 So.2d 200.

He then sought further direct review in the Louisiana Supreme Court. On March 10, 2006, the Court denied writs. *State of Louisiana v. Tony Lavelle Hunter*, 2005-2027 (La. 3/10/2006), 925 So.2d 507.  He apparently did not seek further direct review in the United States Supreme Court.

On February 14, 2007, petitioner filed a *pro se* application for post-conviction relief in the Fourth Judicial District Court raising claims of ineffective assistance of counsel. On May 31, 2007, his application was denied without a hearing. His July 3, 2007, *pro se* application for writs was denied by the Second Circuit Court of appeals on July 19, 2007. *State of Louisiana v. Tony Hunter*, No. KH 07-42774. His *pro se* writ application in the Louisiana Supreme Court was denied without comment on June 6, 2008. *State of Louisiana ex rel. Tony Lavelle Hunter vs. State of Louisiana*, 2007-1768 (La. 6/6/2008), 983 So.2d 910.

Meanwhile, sometime prior to March 12, 2008, Hunter entered into an attorney-client relationship with Kenota Pulliam, Esq.  On some unspecified date, she requested a copy of the District Attorney's case-file and,  on March 12, 2008, the District Attorney transmitted to Pulliam over 308 pages of documents, described as "... motions, briefs, police reports and recorded statements from the District Attorney's file..." [Doc. 3, Appendix D, p. 16] The file included what appears to be the hand-written note of some unnamed officer or investigator dated February 20, 2004; the note, addressed to "Mike,[1]" memorializes a conversation the writer had with Corey Smith, the owner of the .22 caliber hand-gun that was linked to the attempted robbery and homicides. According to the note, Smith, who had been arrested for fighting at the Library Lounge on January 11, 2001, told the interviewer that he gave the keys to his truck to his friend Keith Norman so that the vehicle could be moved from the lounge's parking lot. According to the note, "Cory [sic] said

---

[1] Presumably Assistant District Attorney J. Michael Ruddick, the prosecutor who tried the case.

he believes Keith Norman traded the gun for drugs. Cory noticed the gun missing next day after his arrest when he checked the glove box of his vehicle. Cory said the gun along with other items were missing." The fact that Smith was arrested on January 11, 2001 at 1:07 a.m. was verified by a police report attached to the investigation note. [Doc. 3, Appendix A and Appendix B, pp. 12-13]

Sometime between March 2008 and February 2009, "The relationship between Ms. Pulliam and Mr. Hunter ... ended with complaints to Disciplinary Counsel." [Doc. 3, p. 5, fn. 2] On February 17, 2009 Hunter received "legal mail" (a copy of the District Attorney's file) from Ms. Pulliam as evidenced by a privileged mail receipt signed by petitioner on that date. [Doc. 3, Appendix E, p. 17] According to the pleadings, that date, February 17, 2009, was "the earliest date upon which through the exercise of due diligence the actual predicate of the claims presented in this petition could have been exercised. The existence of the statement in question was undiscovered by Mr. Hunter until that date. That is the date upon which the period of limitations began to run, according to the provisions of Title 28 U.S.C. §2244(d)(1)(D)." [Doc. 3, pp. 3-4]

Thereafter, on March 16, 2009, Hunter's new post-conviction counsel, Mr. Craft, filed a second application for post-conviction relief in the Fourth Judicial District Court. [Doc. 3, pp. 33-48] Among other things, counsel alleged, "On March 12, 2008, the State of Louisiana delivered to prior counsel for Mr. Hunter a package containing contents of the District Attorney's file. Included in those materials, and disclosed to Mr. Hunter and defense counsel for the first time, was a statement by a witness to the effect that the weapon purported to have been used in the offense was stolen and in the possession of another person..." Counsel further alleged, "The homicides for which Mr. Hunter has been convicted and sentenced to three consecutive life sentences were committed with a .22 caliber handgun. The murders took place on the night of March 10, 2011. The handgun was found beside Highway 165 not far from the murder scene about a week later. The evidence not

3

revealed to the defense until March 12, 2008, was that the .22 was reported to have been stolen before the crime and that the police had been told the name of the thief." [Doc. 3, p. 36 – Application for Post-Conviction Relief, "Facts of the Case"]

The application was denied on July 14, 2009. [Doc. 3, pp. 49-52] Among other things, the Court noted, "According to the present Application, on March 12, 2008, the contents of the District Attorney's file were delivered to prior counsel for Defendant. The contents were later transferred to Defendant himself on February 17, 2009, after the attorney/client relationship with prior counsel ended." [*Id*., p. 50] The Court also observed, "... Corey Smith's name, as well as his father's name and address, were contained in a police report that was provided to defense counsel prior to trial. Thus, the defense could have pursued the matter had they chosen to do so. Numerous cases have ruled that the government is not obliged under *Brady* to furnish a defendant with information he already has or, with any reasonable diligence, he can obtain himself. [citation omitted]" [*Id*.]

On August 18, 2009, Hunter, through counsel, sought review in the Second Circuit Court of Appeals. [Doc. 3, pp. 53-73] Once again, counsel alleged that the so-called newly discovered evidence that formed the basis of his application for post-conviction relief was "delivered" to petitioner's attorney and thus "revealed to the defense" on March 12, 2008. [*Id*., p. 57] Petitioner's writ application, which was assigned Docket Number 44992-KH, was denied on September 10, 2009. [Doc. 3, pp. 32 and 74]

On October 12, 2009, Hunter filed a writ application in the Louisiana Supreme Court. [Doc. 3, pp. 19-30] Once again, counsel alleged that the evidence concerning the theft of the murder weapon was "not revealed to the defense until March 12, 2008..." [*Id*., p. 24] and was "...delivered to prior counsel for Mr. Hunter..." in the package submitted by the District Attorney's Office on March 12, 2008. [*Id*., p. 3] On October 29, 2010, writs were denied without comment. *State of*

4

*Louisiana v. Tony Lavelle Hunter*, 2009-2212 (La. 10/29/2010), 48 So.3d 392.

Hunter filed the instant petition on March 2, 2011, raising a single claim for relief, "Failure to disclose the Corey Smith/Keith Norman evidence was a *Brady/Kyles* violation."

*Law and Analysis*

*1. Limitations – §2244(d)(1)(A)*

Title 28 U.S.C. § 2244(d)(1) (as amended by the Anti-terrorism and Effective Death Penalty Act of 1996 or AEDPA) provides a one-year statute of limitations for the filing of applications for *habeas corpus* by persons, such as petitioner, who are in custody pursuant to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review..." 28 U.S.C. §2244(d)(1)(A).[2]

The statutory tolling provision of 28 U.S.C. § 2244(d)(2) provides that the time during which a properly filed application for post-conviction relief was pending in state court is not counted toward the limitation period. *Ott v. Johnson,* 192 F.3d 510, 512 (5th Cir. 1999); *Fields v. Johnson,* 159 F.3d 914, 916 (5th Cir. 1998); 28 U.S.C. §2244(d)(2). However, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court is counted against the one-year limitation period [*Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir. 1999), citing *Flanagan v.*

---

[2] The pleadings and exhibits do not suggest that any State created impediments prevented the filing of this petition. Further, the claims asserted do not rely on a constitutional right newly recognized by the United States Supreme Court and made retroactively applicable to cases on collateral review. [See 28 U.S.C. § 2244(d)(1)(B) and, (C)]

Petitioner maintains that he is entitled to reckon the limitations period as provided by the provisions of §2244(d)(1)(D), "... the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Limitations pursuant to that subsection is discussed in Part 2, below.

*Johnson*, 154 F.3d 196, 199 (5th Cir.1998)] and, of course, the limitations period is tolled only for as long as the state application remains pending in the state's courts. *Johnson v. Quarterman*, 483 F.3d 278 (5th Cir. 2007). Federal courts may raise the one-year time limitation *sua sponte*. *Kiser v. Johnson,* 163 F.3d 326 (5th Cir. 1999).

On June 29, 2005, petitioner's conviction was affirmed by the Second Circuit Court of Appeals. *State of Louisiana v. Tony Lavelle Hunter,* 39,664 (La. App. 2 Cir. 6/29/2005), 907 So.2d 200. Petitioner's application for writs on direct review was denied by the Louisiana Supreme Court on March 10, 2006. *State of Louisiana v. Tony Lavelle Hunter*, 2005-2027, (La. 3/10/2006), 925 So.2d 507. Petitioner did not seek further direct review in the United States Supreme Court. Assuming that petitioner's writ application to the Louisiana Supreme Court was timely, petitioner's judgment of conviction "became final by the ... expiration of the time for seeking ... [direct] review" [28 U.S.C. § 2244(d)(1)(A)], on June 8, 2006, when the ninety-day period for seeking further direct review in the United States Supreme Court expired. See Supreme Court Rule 13; *Ott v. Johnson*, 192 F.3d 510 (5th Cir. 1999) (The state court judgment is not final for *habeas* purposes until the 90 day period for filing a *writ of certiorari* to the United States Supreme Court has expired.)

Since petitioner's judgment of conviction became final for AEDPA purposes on June 8, 2006, petitioner had one year, or until June 8, 2007 to file his federal *habeas corpus* petition.[3]

---

[3] Those federal courts which have addressed the issue maintain that the 1-year limitations established by the AEDPA in 28 U.S.C. §2244(d)(1) "...should be calculated according to the 'anniversary method' under which the limitations period expires on the anniversary date it began to run." *Downs v. McNeil*, 520 F.3d 1311, 1318 (11th Cir.2008), citing *Ferreira v. Sec'y, Dep't of Corr.*, 494 F.3d 1286, 1289 n. 1 (11th Cir.2007) (noting that limitations period should be calculated using "the anniversary date of the triggering event"); *United States v. Hurst*, 322 F.3d 1256, 1260-61 (10th Cir.2003); *United States v. Marcello*, 212 F.3d 1005, 1008-09 (7th Cir.2000). The Fifth Circuit has approved the "anniversary method" when calculating the AEDPA "grace period" [see *Williams v. Cain*, 217 F.3d 303, 304 (5th Cir. 2000)( the 1-year period afforded to prisoner's whose convictions became final prior to the April 24, 1996 effective

Petitioner was able to toll limitations pursuant to the provisions of §2244(d)(2) during the period of time that his first application for post-conviction relief remained pending. According to his pleadings, the first application for post-conviction relief was filed on February 14, 2007. However, a total of 250 days of the limitations period elapsed between the date that his judgment became final (June 8, 2006) and the date he filed his application for post-conviction relief (February 14, 2007). As noted above, any lapse of time <u>before</u> the proper filing of an application for post-conviction relief in state court must be counted against the one-year limitation period. *Villegas v. Johnson,* 184 F.3d 467, 472 (5th Cir. 1999), citing *Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir.1998). Thereafter, petitioner's post-conviction remained pending until June 6, 2008, when the Louisiana Supreme Court denied writs. *State of Louisiana ex rel. Tony Lavelle Hunter vs. State of Louisiana*, 2007-1768 (La. 6/6/2008), 983 So.2d 910. The AEDPA limitations period commenced again following the Supreme Court's writ denial and a period of 283 days elapsed before the second application for post-conviction relief was filed on March 16, 2009. Thus, a period in excess of 1-year, indeed, a total of 533 un-tolled days elapsed between the date that petitioner's judgment of conviction became final and the date he filed his second application for post-conviction relief. Thereafter, a period of 123 days elapsed between the date that his second application for post-conviction relief was denied by the Louisiana Supreme Court (October 30, 2010) and the date counsel filed the instant petition for writ of *habeas corpus* (March 2, 2011). If limitations is calculated pursuant to §2244(d)(1)(A), the instant petition is clearly time-barred.

---

date of the AEDPA expires on April 24, 1997)], and therefore it must be presumed that the Fifth Circuit would likewise apply the "anniversary method" of calculating limitations pursuant to §2244(d)(1)(A).

*2. Limitations – §2244(d)(1)(D)*

Petitioner contends, however, that the AEDPA's 1-year period of limitations should be reckoned in accordance with the provisions of §2244(d)(1)(D) – "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." Furthermore, petitioner argues that February 17, 2009, the date that he received the District Attorney's file and the memorialized statement of Corey Smith from his attorney, Ms. Pulliam, is the earliest date that the factual predicate of his claims could have been discovered.

Of course, if February 17, 2009, is indeed the date from which the 1-year period of limitations should be reckoned, it would follow that the instant petition is timely since less than 1-year elapsed un-tolled between that date and March 2, 2011, the date petitioner filed the instant *habeas* petition.[4] However, pursuant to §2244(d)(1)(D), limitations is not reckoned from the date that a *habeas* petitioner <u>actually discovered the factual predicate of his claim</u>, but rather the date the factual predicate "... <u>could have been discovered in the exercise of due diligence</u>."

The Supreme Court and the Fifth Circuit have not specifically defined "due diligence" in the context of §2244(d)(1)(D), however, both Courts have provided some guidance in defining the phrase as it appears elsewhere in the AEDPA. For example, Title 28 U.S.C. §2244(b)(2) authorizes

---

[4] If February 17, 2009 is the appropriate date for determining limitations, petitioner would be entitled to toll the period of limitations from March 16, 2009 (the date his second application for post-conviction relief was filed in the Fourth Judicial District Court) to October 29, 2010 (the date the Supreme Court denied writs, thus concluding the second post-conviction proceedings).

Only 17 days elapsed between the February 17, 2009 "date of discovery" and the date the second application for post-conviction relief was filed; thereafter, limitations was tolled until October 29, 2010 when the Supreme Court denied his second writ application. A period of 123 days elapsed un-tolled until March 2, 2011 when the instant petition was filed. Thus, if limitations is reckoned from February 17, 2009, a period of only 150 un-tolled days elapsed between the date that the evidence was discovered and the date petitioner's habeas petition was filed.

dismissal of successive *habeas* claims – claims that were not permitted in prior applications – unless, as provided in Subsection(B)(i), "... the factual predicate for the claim could not have been discovered previously through the exercise of <u>due diligence</u>..." In *Johnson v. Dretke*, 442 F.3d. 901, 908 (5th Cir. 2006), the Court, having been called upon to decide whether the *habeas* petitioner's *Brady* claim could be raised in a successive petition, observed "... due diligence is measured against an objective standard, as opposed to the subjective diligence of the particular petitioner of record. The burden to make such a showing, of course, remains the petitioner's."

Further, in the context of Title 28 U.S.C. §2254(e)(2) (which authorizes the court to deny evidentiary hearings in those *habeas corpus* cases where the state prisoner failed to develop the factual basis of his claim unless the claim relies on a "... factual predicate that could not have been previously discovered through the exercise of <u>due diligence</u>..."), the Supreme Court concluded that "Diligence ... depends upon whether the [petitioner] made a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court...." *Williams v. Taylor*, 529 U.S. 420, 435, 120 S.Ct. 1479, 146 L.Ed.2d 435 (2000).

Title 28 U.S.C. §2255, pursuant to which federal prisoners may collaterally attack their convictions in federal court contains a provision identical to §2244(d)(1) – see §2255(f)(4) – which provides that the period of limitation may be reckoned from "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." In *Anjulo-Lopez v. United States*, 541 F.3d 814, 818 (8th Cir. 2008), the Eighth Circuit observed that the statute does not require the maximum feasible diligence, only due, or reasonable, diligence, and that while due diligence does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, it does at least require that a prisoner make reasonable efforts to discover the facts supporting his claims. See also *Aron v. United States*, 291

F.3d 708, 712 (11th Cir. 2002)("... § 2255(4) does not require the maximum feasible diligence, but only 'due,' or reasonable, diligence...")

Petitioner's *Brady* claim relies upon a single document – the hand-written note of some unnamed officer or investigator dated February 20, 2004. As previously noted, the note, addressed to "Mike," memorializes a conversation the writer had with Corey Smith, the owner of the hand-gun that was linked to the attempted robbery and homicides. According to the note, Smith, who had been arrested for fighting at the Library Lounge in Monroe, told the interviewer that he gave the keys to his truck to his friend Keith Norman so that the vehicle could be moved from the lounge's parking lot. According to the note, "Cory [sic] said he believes Keith Norman traded the gun for drugs. Cory noticed the gun missing next day after his arrest when he checked the glove box of his vehicle. Cory said the gun along with other items were missing." Further the note indicated that Smith was arrested on January 11, 2001 at 1:07 a.m. as verified by a police report attached to the investigation note. [Doc. 3, Appendix A and Appendix B, pp. 12-13]

Petitioner's trial occurred in March 2004; the note is dated February 20, 2004. Nothing of record indicates that petitioner's trial counsel was unaware of the existence or contents of the note prior to trial. Petitioner asserts that the "... memo ... was ...not disclosed to the defense until long after the trial and appeals (and initial post-conviction relief proceedings) were over." [Doc. 1, p. 8] However, when he raised this claim in his second application for post-conviction relief, he offered no proof – such as the affidavit of trial counsel for example – to establish this otherwise conclusory and self-serving allegation. Indeed, throughout the second round of post-conviction proceedings, including the instant petition, no proof has been offered to establish that the "memo" was not made available to trial counsel prior to or during trial.

Further, as pointed out by the state trial judge in his Reasons for Judgment denying post-

conviction relief, "... Corey Smith's name as well as his father's name and address were contained in a police report that was provided to defense counsel prior to trial. Thus, the defense could have pursued the matter had they chosen to do so." [Doc. 3, pp. 49-52] Petitioner has not offered the affidavit of trial counsel, or any other evidence to establish whether counsel interviewed Mr. Smith prior to trial, so it is impossible to determine whether trial counsel was aware of the testimony memorialized in the note.

Further, it appears that petitioner's previous post-conviction attorney, Ms. Pulliam, obtained the District Attorney's file either through a simple request or by way of a formal request under Louisiana's Public Records Law, La. R.S.44:1 *et seq*. [Doc. 3, p. 46] Under Louisiana law, "[r]ecords pertaining to pending criminal litigation ... until such litigation has been finally adjudicated ..." are generally not available to the public by way of a Public Records request. See La. R.S.44:3. Louisiana courts interpreting this statute have concluded that neither state post-conviction nor federal *habeas corpus* can be considered "criminal litigation" and therefore Louisiana criminal defendants cannot be denied access to the District Attorney's file once the conviction has become final. *See Wallace v. Ware*, 942204 (La.App. 1 Cir. 6/23/95), 657 So.2d 734; *Voelker v. Miller*, 613 So.2d 1143 (La. App. 5 Cir.1993); *State ex rel. Counterman v. Whitley*, 611 So.2d 661(La. App. 1 Cir.1992) , writ granted 613 So.2d 627, enforcement granted 619 So.2d 538; *Lemmon v. Connick*, 590 So.2d 574 (La. 1991). Petitioner's convictions became final under Louisiana law [La. C.Cr.P. art. 922(D)] on March 10, 2006, when the Supreme Court denied writs on direct review. *State of Louisiana v. Tony Lavelle Hunter*, 2005-2027, (La. 3/10/2006), 925 So.2d 507. Anytime thereafter, petitioner, or anyone acting on his behalf, could have obtained a copy of the District Attorney's file. Nevertheless, he waited a period of almost two years before his attorney requested the file. This two-year delay cannot be construed as "due diligence."

Finally, even if petitioner is given the benefit of every reasonable doubt, his petition must still be considered as time-barred. In his second application for post-conviction relief, petitioner, through current counsel alleged, "<u>On March 12, 2008, the State of Louisiana delivered to prior counsel for Mr. Hunter a package containing contents of the District Attorney's file</u>..." [Doc. 3, p. 36 – Application for Post-Conviction Relief, "Facts of the Case"] Thereafter, in his writ application filed in the Second Circuit, counsel again alleged that <u>the so-called newly discovered evidence</u> that formed the basis of his application for post-conviction relief <u>was "delivered" to petitioner's attorney and thus "revealed to the defense" on March 12, 2008.</u> [Doc. 3, p. 57] Finally, in his writ application filed in the Louisiana Supreme Court counsel again alleged that the evidence concerning the theft of the murder weapon was "<u>not revealed to the defense until March 12, 2008...</u>" [Doc. 3, p. 24] In other words, petitioner, through his attorney, Ms. Pulliam, must be considered to have known about the existence of the evidence in question sometime shortly after March 12, 2008 when Ms. Pulliam, acting on behalf of petitioner, received the District Attorney's file.

Since petitioner's first application for post-conviction relief was still pending when Ms. Pulliam received the District Attorney's file, petitioner may rely on tolling pursuant to §2244(d)(2) until June 6, 2008 when the Louisiana Supreme Court denied writs and thus ended petitioner's first round of post-conviction litigation. *State of Louisiana ex rel. Tony Lavelle Hunter vs. State of Louisiana*, 2007-1768 (La. 6/6/2008), 983 So.2d 910. A period of 283 days elapsed un-tolled between that date and March 16, 2009 when petitioner, through his current counsel, filed his second round of post-conviction relief. Petitioner's second post-conviction application remained pending until October 29, 2010 when the Louisiana Supreme Court again denied relief. *State of Louisiana v. Tony Lavelle Hunter*, 2009-2212 (La. 10/29/2010), 48 So.3d 392. Thereafter, petitioner was no longer eligible for statutory tolling pursuant to §2244(d)(2) and a period of 123 days elapsed before

he filed the instant petition on March 2, 2011. In other words, a period of well over 1-year – 405 days to be exact – elapsed between the time that petitioner's attorney, Ms. Pulliam received the District Attorney's file and the "newly discovered evidence" and the day that present counsel filed the instant petition.

In short, even if petitioner is given the benefit of tolling pursuant to §2244(d)(1)(D), his current petition is time-barred since more than 1-year elapsed un-tolled between the date that the evidence could have been discovered through the exercise of due diligence and the date that the instant petition was filed.

### 3. Equitable Tolling

The Fifth Circuit has held that the AEDPA's one-year statute of limitations can, in rare and exceptional circumstances, be equitably tolled. *See Davis v. Johnson*, 158 F.3d 806, 811 (5th Cir.1998). However, "[e]quitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir.1999) (quotation marks omitted). "A petitioner's failure to satisfy the statute of limitations must result from external factors beyond his control; delays of the petitioner's own making do not qualify." *In re Wilson*, 442 F.3d 872, 875 (5th Cir.2006). As recently noted by the Supreme Court, "To be entitled to equitable tolling, [the petitioner] must show '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Lawrence v. Florida*, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S.Ct. 1807, 161 L.Ed.2d 669 (2005)).

Nothing of record thus far supports equitable tolling of the statute of limitations in the instant case. It does not appear from the evidence thus far submitted that petitioner was either actively

misled by the state or otherwise prevented in some extraordinary way from asserting his rights by timely filing his *habeas* claims. Indeed, counsel was directed to provide argument in favor of the application of equitable tolling and failed to do so. Further, as noted above, petitioner was hardly diligent in his pursuit of *habeas corpus* relief.

Nevertheless, this is a Report and Recommendation, and, as shown below, petitioner may object to this Report and if so, he is encouraged to provide evidence and argument to support any claim of equitable or statutory tolling.

### *Conclusion and Recommendation*

Therefore,

**IT IS RECOMMENDED** that this petition for *habeas corpus* be **DENIED AND DISMISSED WITH PREJUDICE** because petitioner's claims are barred by the one-year limitation period codified at 28 U.S.C. §2244(d).

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the District Judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See, Douglass v. United Services Automobile Association***, 79 F.3d 1415 (5th Cir. 1996).**

14

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. **Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue.** See 28 U.S.C. §2253(c)(2). **A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.**

In Chambers, Monroe, Louisiana. August 1, 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE